# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

WESTERN DIVISION

Docket No._____

FILED

U.S. DISTRICT COURT

RICKY L. MOORE and KATHRYN M. MOORE

                              Plaintiffs

v.

KERRY P. STEARNS, LAURIE C. NIKITUK
and POND PASTURE REAL ESTATE, Inc.

                              Defendants

COMPLAINT
(Jury Trial Demanded)

# 05 - 30010 - MAP

**FILING FEE PAID:**
RECEIPT # _305823_
AMOUNT $ _150.00_
BY DPTY CLK _MGL_
DATE _1/14/05_

## PARTIES

1. The Plaintiffs RICKY L. MOORE and KATHRYN M. MOORE, are natural persons residing at 1226 North Ninth Avenue, Iron River, Michigan.

2. The Defendant KERRY P. STEARNS is a natural person residing at Otis, Hampden County Massachusetts.

3. The Defendant LAURIE C. NIKITUK, is a natural person residing at 204 Kingsley Road, Otis, Hampden County, Massachusetts, and was an agent for and/or employed by defendant Pond Pasture Real Estate.

4. The Defendant POND PASTURE REAL ESTATE, Inc. was a domestic corporation with a principal place of business located at 163 East Otis Road, Otis, Hampden County Massachusetts. Said corporation was voluntarily dissolved on December 31, 2002.

## JURISDICTION

5. This civil action is between citizens of different states and the amount in controversy, exclusive of interests and costs, exceeds $75,000.00. Subject matter jurisdiction exist pursuant to 28 U.S.C. § 1332. Venue is proper in the District of Massachusetts under 28 U.S.C. §1391(a).

## INTRODUCTION

6. In July of 2002, the Defendant, Laurie C. Nikituk, presented the property known as 1495 Reservoir Road, located in Otis, Hampden County, Massachusetts to the Plaintiffs. The plaintiffs were given a Massachusetts Association of Realtors® Seller's Description of Property by the Listing Agent, Laurie C. Nikituk. Said description contained, *inter alia*, a disclosure regarding the drinking water source. The description stated that there were "*no known problems with quality/quantity*" of the drinking water or its source.

7. The disclosure was signed by the seller and served as an express representation regarding the condition of the property.

8. The Plaintiff Ricky L. Moore made an offer to Kerry P. Stearns to purchase the property commonly known as 1495 Reservoir Road, Otis, Massachusetts.

9. On or about July 22, 2002, the plaintiff Ricky L. Moore and Defendant Kerry P. Stearns entered into an agreement to buy and sell real estate, specifically the real estate known as 1495 Reservoir Road.

10. Prior to the property being conveyed, the Plaintiff was provided with a Title V inspection report. The report indicated that it was completed by Dave A. Sullivan. The inspection was performed at the request of the defendant Kerry P. Stearns.

11. Said report presented to the Plaintiff Ricky L. Moore represented that the system servicing the property conditionally passed the inspection, subject to a passing water test and subsequent approval of the Otis Board of Health. This was due to the fact that the well servicing the property was within 50 feet of the soil absorption system.

12. On or about August 20, 2002, the property was conveyed from the defendant Kerry P. Stearns to Ricky L. Moore.

## COUNT I
### (FRAUD and DECEIT
### RICKY L. MOORE v. KERRY P. STEARNS)

13. Subsequent to the conveyance of the property known as 1495 Reservoir Road, the Plaintiff discovered that the septic system servicing the property was not in proper working order. The plaintiff was forced to have the septic tank pumped several times as a result of the system not working properly.  In an effort to repair the faulty system, the Title V report presented to the plaintiff Ricky L. Moore at the time of conveyance was submitted to the Commonwealth of Massachusetts executive office of the Department of Environmental Protection, Western Regional Office.

14. Upon review of the Title V inspection, the program director pointed out several criteria upon which the Title V inspector should have failed the system.

15. Massachusetts law requires sellers of real property with private sewer systems to have a thorough system inspection prior to conveyance.  If the system fails to meet certain minimum criteria, the property, as a matter of law cannot be conveyed.

16. The Defendant Kerry P. Stearns is vicariously liable for the actions of his agents.  Due to his agents lack of due diligence, the defendant Kerry P. Stearns provided an inaccurate and incomplete Title V report to the Plaintiff Ricky L. Moore.  Said report served as a material representation that private sewer system was in good working order and that the condition of the private sewer system met the requirements set forth in 310 Massachusetts Code of Regulations 15.301., when in fact it did not.

17. The Title V inspection report induced the plaintiff Ricky L. Moore go through with the purchase of the property.

18. The Plaintiff Ricky L. Moore justifiably relied on the defendant Kerry P. Stearns representations, to his detriment.

19. As a result, the Plaintiff Ricky L. Moore has been damaged in that he is the record title holder to the real estate which requires thousands of dollars in repairs in order to bring the system into compliance with the Massachusetts Code of Regulations 15.301.

## COUNT II
### (MUTUAL MISTAKE
### RICKY L. MOORE v. KERRY P. STEARNS)

20. The Plaintiffs repeat and reallege paragraphs 1 through 19 as if restated fully herein.

21. The Defendant Kerry P. Stearns provided a Title V inspection report to the Plaintiff Ricky L. Moore.

22. A passing Title V inspection report was a condition precedent in the contract entered into by the Plaintiff Ricky L. Moore and the Defendant Kerry P. Stearns

23. Subsequent test and review of the Title V inspection report revealed that the report presented to the Plaintiff was inaccurate and that the private sewer system servicing the property did not meet the criteria required by 310 Massachusetts Code of Regulations 15.301.

24. The fact that the private sewer system is in failure is material in that the property will not accommodate a typical septic system design, replacement is very costly and the Plaintiff would not have purchased the property if provided with this information prior to the conveyance.

25. The Plaintiff Ricky L. Moore justifiably relied upon the report provided to him from Kerry P. Stearns and acted with reasonable care under circumstances.

26. As a result of the mutual mistake, the Plaintiff Ricky L. Moore has suffered a damages

### COUNT III
(MISREPRESENTATION v. KERRY P. STEARNS)

27. The Plaintiffs repeat and reallege paragraphs 1 through 26 as if restated fully herein.

28. The Plaintiffs reasonably relied upon the Defendant Kerry P. Stearns representations that there were no known problems with the drinking water supply.

29. Subsequent to the conveyance of the property, the Plaintiffs became ill. After numerous months of suffering from the illness and after several visits to a physician, their physician recommend that the plaintiffs have their drinking water supply tested.

30. The Plaintiffs had the drinking water supply tested and the test revealed abnormally high levels of nitrate in the water.

31. The Plaintiff's physician determined that the nitrate in the drinking water supply was the cause of the Plaintiff's sickness.

32. The Plaintiffs flushed the drinking water system several times and were able to reduce the level of nitrate to an acceptable level, however it consistently returned to its previous level within a few weeks.

33. Paragraph 17 of the purchase and sale agreement signed by the Defendant Kerry P. Stearns specifically stated that the well contained no defects known to seller.

34. Upon information and belief, the Defendant Kerry P. Stearns had problems with the water supply prior to the property being listed for sale, that the water had been tested on

numerous occasions, that prior tenants were advised to refrain from consuming the water and he knew or should have known that the well servicing the property was defective.

35. Upon information and belief, the Defendant Kerry P. Stearns took steps to hide the fact that the water contained high levels of nitrate in an effort to ensure the water test would pass the Title V inspection.

36. The Plaintiffs have not consumed the water since the test revealed the high levels of nitrate in the drinking water supply and their health has improved.

37. As a result, the Plaintiff Ricky L. Moore has been damaged in that he is the record holder to real estate which requires thousands of dollars in repairs in order to bring the drinking water system into compliance with the Massachusetts Code of Regulations 15.301, et seq..

38. As a result of the Defendant Kerry P. Stearns representation, the Plaintiffs have suffered from great pain of mind and body. In addition, the Plaintiffs have incurred great expense associated with medical treatment for both physical and psychological ailments.

### COUNT IV
### (MISREPRESENTATION/FAILURE TO DISCLOSE/FRAUD/DECEIT
### v. KERRY P. STEARNS.)

39. The Plaintiffs repeat and reallege paragraphs 1 through 38 as if restated fully herein.

40. The Defendant Kerry P. Stearns as seller of the property had a duty to disclose any past problems with the drinking water supply as he knew or should have known that the defect was latent and predictably could affect the health, safety and welfare of the plaintiffs.

41. The Defendant Kerry P. Stearns is liable to the Plaintiff Ricky Moore for his omission because he had special knowledge of a material fact that was not readily discernable and

knew or should have known that a potential purchaser of the property would want to know prior to making an offer to purchase.

42. As a result, the Plaintiff Ricky L. Moore has been damaged in that he is the record title holder to real estate which requires thousands of dollars in repairs in order to bring the drinking water system into compliance with the Massachusetts Code of Regulations 15.301, et seq..

43. As a result of the Defendant Kerry P. Stearns omission, the Plaintiffs have suffered from great pain of mind and body. In addition, the Plaintiffs have incurred great expense associated with medical treatment for both physical and psychological ailments.

## COUNT V
### (MISREPRESENTATION v. LAURIE C. NIKITUK AND POND PASTURE REAL ESTATE, Inc.)

44. The Plaintiffs repeat and reallege paragraphs 1 through 43 as if restated fully herein.

45. Laurie C. Nikituk was the agent and/or employee for Pond Pasture Real Estate, Inc., the listing broker for the Seller Defendant Kerry P. Stearns.

46. Prior to the property being conveyed, the Plaintiff's specifically questioned Laurie C. Nikituk, the listing agent for the seller, Defendant Kerry P. Stearns if the seller had ever had any problem with the water quality and quantity.

47. The Defendant Laurie C. Nikituk represented to the Plaintiffs that the seller had not experienced any problems with the drinking water supply.

48. Prior to the property being conveyed, the Plaintiff's specifically questioned Laurie C. Nikituk, the listing agent for the seller, Defendant Kerry P. Stearns if the owner had ever had any problems with the drinking water.

49. The Defendant Laurie C. Nikituk made a representation to the Plaintiffs, that, *inter alia* "the water had already been tested, the water passed and that they would be wasting their money if they did decide to test it."

50. The plaintiff's justifiably relied on the representations of Laurie C. Nikituk and consequently the Plaintiffs did not have the water tested.

51. The representation made was false.

52. As a result of their reliance on the Defendant Laurie C. Nikituk's representations, the Plaintiffs have suffered from great pain of mind and body. In addition, the Plaintiffs have incurred great expense associated with medical treatment for both physical and psychological ailments.

53. As a result, the Plaintiff Ricky L. Moore has been damaged in that he is the record title holder to real estate which requires thousands of dollars in repairs in order to bring the drinking water system into compliance with the Massachusetts Code of Regulations 15.301, et seq..

## COUNT VI
### (UNFAIR AND DECEPTIVE PRACTICE
c. 93A CONSUMER PROTECTION VIOLATION v. Laurie C. Nikituk)

54. The Plaintiffs repeat and reallege paragraphs 1 through 53 as if restated fully herein.

55. This is an action for injunctive relief and damages pursuant to the Massachusetts Consumer Protection Act, G.L. c. 93A, §§ 2, 9(1).

56. The Defendant Laurie C. Nikituk as agent for the Defendant Kerry P. Stearns had an duty relay any questions she did not know the answers to regarding specific conditions of the property to the seller defendant Kerry P. Stearns.

57. The Defendant Laurie C. Nikituk made a representation as a matter of fact, irregardless of the fact that she herself had no actual knowledge of the condition and never in fact relayed such questions regarding the condition of the property to the seller.

58. Laurie C. Nikituk's actions or failure to act are deceptive in that said actions caused the Plaintiff Ricky L. Moore  to act differently than he would have had the Defendant Laurie C. Nikituk acted with due diligence.

    The actions of Laurie C. Nikituk constitute unfair and deceptive acts or practices violative of Massachusetts Protection Act G.L. c. 93A § 2.

59. The acts or practices of the Defendant resulting in the loss described in paragraphs 52 and 53, supra, were done willfully or knowingly in violation of G.L. c. 93A, §2.

60. On or about March 18th, 2004, the Plaintiff served the via certified mail a written demand for relief identifying the claimant and reasonably describing the unfair or deceptive practice relied upon and the injury suffered.  A copy of this written demand for relief is attached hereto as Exhibit 1.

61. On or about April 16, 2004, the Defendant Laurie C. Nikituk by an through her counsel responded to said demand, claimed no liability and tendered no offer of settlement.

62. As a result of their reliance on the Defendant Laurie C. Nikituk's actions or failure to act, the Plaintiffs have suffered from great pain of mind and body.  In addition, the Plaintiffs have incurred great expense associated with medical treatment for both physical and psychological ailments.

63. As a result, the Plaintiff Ricky L. Moore has been damaged in that he is the record holder to real estate which requires thousands of dollars in repairs in order to bring the drinking water system into compliance with the Massachusetts Code of Regulations 15.301, et seq..

WHEREFORE the Plaintiffs pray this Honorable Court grant them the following relief

   I.      Judgment be entered against the Defendant Kerry P. Stearns in the amount equal to the purchase price of the property and the Defendant Kerry P. Stearns be enjoined take back title to the real estate; or

   II.     Judgment be entered against the Defendant Kerry P. Stearns in the amount equal the entire amount to replace the existing private sewer system and private well, and

   III.    The plaintiffs be compensated for their actual damages sustained in regards to the real estate;

   IV.     The Plaintiffs be compensated for their physical pain and suffering and mental anguish caused by the Defendant Kerry P. Stearns, with interest

   V.      The Plaintiffs be awarded their cost and attorney's fees;

   VI.     Any other relief this court feels is just and equitable.

WHEREFORE the Plaintiffs pray this Honorable Court grant them the following relief against Laurie C. Nikituk and Pond Pasture Real Estate, Inc.;

   VII.    Judgment be entered against the Defendants Laurie C. Nikituk and Pond Pasture Real Estate, Inc. and the plaintiffs be awarded for their actual damages in the amount equal to the cost to replace the existing private sewer system and private well servicing the real estate;

VIII.  The Plaintiffs be compensated for their physical pain and suffering and mental anguish caused by Pond Pasture Real Estate's Agent, Defendant Laurie C. Nikituk's misrepresentations, with interest;

IX.  The Plaintiffs be compensated for their physical pain and suffering and mental anguish caused by Pond Pasture Real Estate's Agent, Defendant Laurie C. Nikituk's misrepresentations, with interest

X.  The Plaintiffs be awarded their cost and attorney's fees pursuant to M.G.L. c. 93A ;

XI.  The Court award double or treble damages pursuant to M.G.L. c. 93A;

XII.  Any other relief this court feels is just and equitable.

**THE PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL COUNTS SO TRIABLE**

THE PLAINTIFFS
Ricky L. Moore and Kathryn M. Moore
By their attorney,

Dated:    January 14, 2005

Bradford B. Moir, Esquire
MOIR & ROSS
45 Broad Street, Suite #2
Westfield, MA  01085
Tel. (413) 568-1957
Fax. (413) 562-4691
BBO# 350600

PLAINTIFF'S
EXHIBIT
1

# MOIR & ROSS
### LAW OFFICES
**45 BROAD STREET, SUITE TWO**
**WESTFIELD, MASSACHUSETTS 01085-5200**

BRADFORD B. MOIR

ANNETTE Z.P. ROSS*
OF COUNSEL

TELEPHONE: (413) 568-1957
FACSIMILE: (413) 562-4691
moiross@aol.com

*also admitted in Florida
with an office in Venice

SENT VIA CERTIFIED MAIL 7002 2410 0004 8796 8835
AND UNITED STATES FIRST CLASS MAIL

7002 2410 0004 8796 8835

March 10, 2004

Mrs. Laurie Nikituk
204 Kingstley Rd.
Otis, MA 01253

RE:     1495 Reservoir Road, Otis, Massachusetts.

Dear Mrs. Nikituk;

This is a demand for relief pursuant to the Massachusetts Consumer Protection Act, G.L. c. 93A, § 9(3). The claimants are Ricky L. Moore and Kathryn Moore, 1495 Reservoir Road, Otis, Massachusetts.

Please be advised that this office represents Mr. Ricky L. Moore and Mrs. Kathryn Moore. On the twentieth day of August in 2002 Mr. Ricky L. Moore purchased the above referenced property from Kerry Stearns. Mr. and Mrs. Moore have related to me that they had expressed concerns to you regarding the well water. In particular, they had specifically asked you if they should have the well water tested themselves. Mr. and Mrs. Moore claimed that your response was "you would be wasting your money, the seller had the water tested and it passed". A new test is not going to show anything different then the water test that was already done." Your actions were in the very least professionally negligent given the fact that the truth regarding the well water was easily ascertainable, i.e. asking Mr. Stearns if he had every had any problems with the well water in the past or if he had experienced any problems with obtaining a passing water test.

Unfortunately for Mr. & Mrs. Moore, they relied on your representation. The fact of the matter is, the well water servicing the premises was contaminated and had dangerously high levels of Total Coliform and does not meet the Commonwealth's public drinking water bacteriological standards. In addition, the Moore's have presented to me evidence that suggest

Laurie Nikituk
March 10, 2004
Page 3 of 3

the same problem.  Since the Title V Inspection was not valid, and that the property should never have been conveyed, and in addition you misrepresented the quality of the water, the Moore's demand that you reimburse them for the full purchase price of their property, including their cost and expenses.  They will in turn deed the property over to you.

2.  Due to your intentional misrepresentation, the Moore's have suffered both physically and psychologically, Mrs. Moore in particular has had to undergo extensive psychological therapy and has developed an aversion to water.  This physical pain and suffering is a direct and proximate result of your negligent misrepresentation and the Moore's hereby demand $25,000.00 in damages.

3.  The Moore's demand that they be reimbursed for all of their out of pocket expenses, including attorney's fees to date.

In the event you decline to respond to this demand letter, please take notice that the Massachusetts Consumer Protection Act provides that if the Moore's prevail in an action against you, you can be held liable for double or treble damages, expenses and attorney's fees.  Under Massachusetts law, you have thirty days to respond to this letter before I initiate litigation on the Moore's behalf.

Sincerely,
MOIR & ROSS

Bradford B. Moir, Esq.

Enclosure
CC. Mr. and Mrs. Ricky Moore

Laurie Nikituk
March 10, 2004
Page 2 of 2

that Mr. Stearns knew the well water was contaminated and that the previous tenants of the property had problems with the well water. Whether or not that was disclosed to you is yet to be determined.

Enclosed is a copy of a letter from Department of Environmental Protection, Western Regional Office summarizing it's review of the Title V inspection completed by David A. Sullivan on August 16, 2001. The review was completed by the Executive Office of Environmental Affairs. As you will be able to glean from the report, the Title V inspection contained many errors and omissions. Of particular interest is the item number 5 of the report, that the results of the Total Coliform bacteria test were invalid due to the analysis being conducted more than 30 hours after the sample was collected. In addition, the water test shows the presence of Dichloromethane at a concentration of 0.79 ug/l, an indication that bleach may have been used in an effort to bring the Total Coliform levels down to 0 and pass the Title V inspection.

As a result of your misrepresentation, Mr. and Mrs. Moore had been consuming contaminated water since the property was conveyed to them on August 20, 2002. Each of them became very ill and had their primary care physician puzzled for months as to the cause. Mrs. Moore suffered from head aches, fatigue, muscle pain, diarrhea, sore throat, foul smelling urine, loss of hair, dry skin, bruising, dizziness, chills, and fainting. Mr. Moore suffer from similar symptoms, fatigue, muscle pain, diarrhea, and joint pain. After the Moore's stopped drinking the well water, each of their symptoms began to resolve within two weeks, but still to this date still affect them.

The Moore's have spent considerable monies testing and retesting the well water. Each test revealed a high count of Total Coliform. In addition, the source of the Total Coliform is unknown, but could quite possibly be the septic system servicing the property given its proximity to the well. Had they not relied on your representation, all of this may had been avoided.

Given the circumstances surrounding the real estate transaction, Mr. & Mrs. Moore demand the following:

1. The property can not be sold given the severe well water problem it has. The property is relatively worthless in its present condition. It cannot be rented due to the poor water quality. The Moore's have surmised from experts in the industry that no matter what steps they take to correct the problem, there is no guarantee that a new well will not have



COMMONWEALTH OF MASSACHUSETTS
EXECUTIVE OFFICE OF ENVIRONMENTAL AFFAIRS
DEPARTMENT OF ENVIRONMENTAL PROTECTION
WESTERN REGIONAL OFFICE
436 Dwight Street • Springfield, Massachusetts 01103 • (413) 784-1100

MITT ROMNEY
Governor

KERRY HEALEY
Lieutenant Governor

ELLEN ROY HERZFELDER
Secretary

ROBERT W. GOLLEDGE, Jr.
Commissioner

JAN 1 4 2004

Richard and Kathy Moore
P.O. Box 913
East Otis, MA 01029-0913

Re:     Otis-WMM
        Moore Complaint
        1495 Reservoir Road
        Project #03-225-104

Dear Mr., & Ms. Moore:

The Department has reviewed your correspondences of November 5 and 20, 2003 regarding a Title 5 Inspection Report for 1495 Reservoir Road in East Otis, Mass conducted by David A. Sullivan on August 16, 2001. According to the Report the system 'needs further evaluation by the Local Approving Authority' due to the system having a septic tank and soil absorption system (SAS) with the SAS being within 50 feet of a private water supply well. Included with the Report are results of water sampling collected on July 24, 2001, a September 11, 2001 letter from Peter Kolodziej, Agent for the Otis Board of Health, and results of water sampling collected on November 5, 2003.

Based on a review of the Title 5 Inspection Report and accompanying correspondence, the Department finds the following:

1.    Part D, page 4 of the Report requires the Inspector to indicate "yes" or "no" to the failure criteria listed. The Department finds that at least one criterion was left blank (i.e. Discharge or ponding of effluent to the surface of the ground or surface waters due to an overloaded or clogged SAS or cesspool).

2.    Page 5, size and location of SAS: The word 'determined' was crossed off and 'approximate' typed in. The Report specifically states that approximating the location of SAS is unacceptable if the determination involves failure criteria related to distance (i.e. setback to well).

This information is available in alternate format. Call Debra Doherty, ADA Coordinator at 617-292-5565. TDD Service - 1-800-298-2207.

DEP on the World Wide Web: http://www.mass.gov/dep
♻ Printed on Recycled Paper

3. Page 6 indicates that the last date of occupancy 'Present' and that a new septic tank was installed on June 29, 2001, the date of the inspection is listed as August 16, 2001, yet Page 7 of the Report indicates that the tank is new and has not been used. If the house was currently occupied why was the tank not used? In addition the size of the new tank was listed as 8'6"x5'x48". Even assuming that the dimensions listed were inside tank dimensions, then the volume of the tank would be approximately 1270 gallons. Section 310 CMR 15.404 allows the upgrade of a single component of a system (e.g. septic tank) provided that component upgrade is in full compliance with 310 CMR 15.00. Section 310 CMR 15.223(1)(a) requires that the effective liquid capacity of a septic tank be in no case less than 1500 gallons.

4. Page 9 indicates that the SAS was monitored and dye tested for two days and showed no signs of breakout, ponding, hydraulic failure or abnormal vegetation. If the monitoring was part of the inspection, why was only one date listed on the Report? More importantly why was the system dye tested?

5. The accompanying lab analyses with the report that were taken on July 24, 2001 appear to have been taken almost a month prior to the date of the inspection. In addition, while the samples for Total Coliform bacteria were collected on July 24, 2001 at 2:45 pm, the samples were not analyzed until July 26, 2001, more than the 30 hour holding time for Total Coliform. Hence the results for Coliform analysis were invalid. The VOC results show the presence of Dichoromethane at a concentration of 0.79 ug/l. The nitrate result was 0.68 mg/l and the ammonia result was listed as 'not detected'.

6. The September 11, 2001 letter issued for the Board of Health has determined that the system is functioning in a manner that protects public health, safety and the environment (section 310 CMR 15.303(1)(c)). However the Board, as part of its determination, must consider the condition of the water supply including an analysis for coliform bacteria. Section 5 above shows the results of the Total Coliform analysis to be invalid.

7. The results of samples taken by yourself on November 5, 2003, more than 2 years after the date of the Title 5 Inspection showed a total coliform count of 2 colonies per 100 ml of sample. In addition the sample was analyzed for E.Coli with a result of 0 colonies per 100 ml. The nitrate result was 3.66 mg/l and the ammonia results was listed as '<0.01mg/l'.

While the more recent analysis does show higher levels of nitrate than the analysis of July 24, 2001, the results do not conclusively indicate that the bacteria problems found in your well are results of an impact by a septic system. You have indicated via telephone conversations that the top of your well casing is located in a below ground pit. Furthermore you relayed information from a contractor who performed well maintenance on your well that the pit had water in it on previous occasions. You also expressed concern that your neighbor's subsurface disposal system was, based on surficial topography, at a higher elevation than your well and was therefore impacting your well. While any of the above factors could theoretically impact on your well, there is not, based on the available information you have provided, sufficient information to conclude with any assurance which, if any of the above factors could cause the bacterial problems in your drinking supply well. Certainly if there was water present in the well pit, it would be prudent to raise the well casing above ground.

If there are any questions regarding this matter, please contact Paul Nietupski at 413-755-2218 at this office.

Sincerely,

Mark A. Schleeweis
Program Chief, Wastewater Program
Bureau Resource Protection

PJN/pjn
W:\brp\wpc\wpcdoc\Complaints\T5cpOtisMoore

cc:    Otis Board of Health, P.O. Box 237, Town Hall Otis, MA 02153

COMMONWEALTH OF MASSACHUSETTS
EXECUTIVE OFFICE OF ENVIRONMENTAL AFFAIRS
DEPARTMENT OF ENVIRONMENTAL PROTECTION

*Posted 8-20-01*

## TITLE 5
### OFFICIAL INSPECTION FORM – NOT FOR VOLUNTARY ASSESSMENTS
### SUBSURFACE SEWAGE DISPOSAL SYSTEM FORM
#### PART A
#### CERTIFICATION

Property Address: __1495 Reservoir Road, East Otis__    Map: ____    Lot#: ____

Owner's Name: __Kerry Stearns__
Owner's Address: __P.O. Box 678__
__Otis, Ma. 01053__
Date of Inspection: __August 16, 2001__

Name of Inspector: (please print) __David A. Sullivan__
Company Name: __Sullivan Inspections__
Mailing Address: __P.O. Box 4052__
__East Otis, Ma. 01029__
Telephone Number: __413-269-4880__

## CERTIFICATION STATEMENT

I certify that I have personally inspected the sewage disposal system at this address and that the information reported below is true, accurate and complete as of the time of the inspection. The inspection was performed based on my training and experience in the proper function and maintenance of on site sewage disposal systems. I am a DEP approved system inspector pursuant to Section 15.340 of Title 5 (310 CMR 15.000). The system:

____ Passes

____ Conditionally Passes

__X__ Needs Further Evaluation by the Local Approving Authority *(meaning Jack C.*

____ Fails

Inspector's Signature: _____    Date: __AUG 17, 2001__

The system inspector shall submit a copy of this inspection report to the Approving Authority (Board of Health or DEP) within 30 days of completing this inspection. If the system is a shared system or has a design flow of 10,000 gpd or greater, the inspector and the system owner shall submit the report to the appropriate regional office of the DEP. The original should be sent to the system owner and copies sent to the buyer, if applicable, and the approving authority.

Notes and Comments
    This document should not be acted on until reviewed by the town Board of Health or its agent. N.A.= Not applicable.

****This report only describes conditions at the time of inspection and under the conditions of use at that time. This inspection does not address how the system will perform in the future under the same or different conditions of use.

*Sullivan Inspections*
*Dave Sullivan*
*P.O. Box 4052, East Otis, MA*
*413-269-4880*

## OFFICIAL INSPECTION FORM – NOT FOR VOLUNTARY ASSESSMENTS
## SUBSURFACE SEWAGE DISPOSAL SYSTEM INSPECTION FORM
### PART A
### CERTIFICATION (continued)

Property Address: _____ 1495 Reservoir Road, East Otis

Owner: _____ Stearns
Date of Inspection: _____ August 16, 2001

Inspection Summary: Check A,B,C,D or E / ALWAYS complete all of Section D

A. System Passes: _____ N.A.

_____ I have not found any information which indicates that any of the failure criteria described in 310 CMR 15.303 or in 310 CMR 15.304 exist. Any failure criteria not evaluated are indicated below.

Comments:
_____
_____
_____

B. System Conditionally Passes: _____ N.A.

_____ One or more system components as described in the "Conditional Pass" section need to be replaced or repaired. The system, upon completion of the replacement or repair, as approved by the Board of Health, will pass.

Answer yes, no or not determined (Y,N,ND) in the _____ for the following statements. If "not determined" please explain.

_____ The septic tank is metal and over 20 years old* or the septic tank (whether metal or not) is structurally unsound, exhibits substantial infiltration or exfiltration or tank failure is imminent. System will pass inspection if the existing tank is replaced with a complying septic tank as approved by the Board of Health.
*A metal septic tank will pass inspection if it is structurally sound, not leaking and if a Certificate of Compliance indicating that the tank is less than 20 years old is available.

ND explain:

_____ Observation of sewage backup or break out or high static water level in the distribution box due to broken or obstructed pipe(s) or due to a broken, settled or uneven distribution box. System will pass inspection if (with approval of Board of Health):

_____ broken pipe(s) are replaced
_____ obstruction is removed
_____ distribution box is leveled or replaced

ND explain:

_____ The system required pumping more than 4 times a year due to broken or obstructed pipe(s). The system will pass inspection if (with approval of the Board of Health):

_____ broken pipe(s) are replaced
_____ obstruction is removed

ND explain:

2

Sullivan Inspections
Dave Sullivan
P.O. Box 4052, East Otis, MA
413-269-4880

# OFFICIAL INSPECTION FORM - NOT FOR VOLUNTARY ASSESSMENTS
## SUBSURFACE SEWAGE DISPOSAL SYSTEM INSPECTION FORM
### PART A
### CERTIFICATION (continued)

Property Address: ___1495 Reservoir Road,___ East Otis

Owner: _____Stearns_____

Date of Inspection: ___August 16, 2001___

## C. Further Evaluation is Required by the Board of Health:

___X___ Conditions exist which require further evaluation by the Board of Health in order to determine if the system is failing to protect public health, safety or the environment.

1. System will pass unless Board of Health determines in accordance with 310 CMR 15.303(1)(b) that the system is not functioning in a manner which will protect public health, safety and the environment:

   ___ Cesspool or privy is within 50 feet of a surface water - ~~creek~~ / ~~just run off~~ ?
   ___ Cesspool or privy is within 50 feet of a bordering vegetated wetland or a salt marsh

2. System will fail unless the Board of Health (and Public Water Supplier, if any) determines that the system is functioning in a manner that protects the public health, safety and environment:

   ___ The system has a septic tank and soil absorption system (SAS) and the SAS is within 100 feet of a surface water supply or tributary to a surface water supply.

   ___ The system has a septic tank and SAS and the SAS is within a Zone 1 of a public water supply.

   ___X___ The system has a septic tank and SAS and the SAS is within 50 feet of a private water supply well.
   See attached well water analysis.

   ___ The system has a septic tank and SAS and the SAS is less than 100 feet but 50 feet or more from a private water supply well**. Method used to determine distance ___Tape___

   **This system passes if the well water analysis, performed at a DEP certified laboratory, for coliform bacteria and volatile organic compounds indicates that the well is free from pollution from that facility and the presence of ammonia nitrogen and nitrate nitrogen is equal to or less than 5 ppm, provided that no other failure criteria are triggered. A copy of the analysis must be attached to this form.

3. Other:

   _____
   _____
   _____

File # ___1010___                    3                    *Sullivan Inspections*
                                                          *Dave Sullivan*
                                                          *P.O. Box 1052, East Otis, MA*
                                                          *413-269-4886*

**OFFICIAL INSPECTION FORM – NOT FOR VOLUNTARY ASSESSMENTS**
**SUBSURFACE SEWAGE DISPOSAL SYSTEM INSPECTION FORM**
**PART A**
**CERTIFICATION** (continued)

Property Address: __1495 Reservoir Road, East Otis__

Owner: _____ __Stearns__
Date of Inspection: __August 16, 2001__

_Section_ → **D.** System Failure Criteria applicable to all systems:
You **must** indicate "yes" or "no" to each of the following for **all** inspections:

Yes   No

_not_
_answered_ → ___  _X_  Backup of sewage into facility or system component due to overloaded or clogged SAS or cesspool

___  ___  Discharge or ponding of effluent to the surface of the ground or surface waters due to an overloaded or clogged SAS or cesspool

___  _N.A_  Static liquid level in the distribution box above outlet invert due to an overloaded or clogged SAS or cesspool

___  _N.A._  Liquid depth in cesspool is less than 6" below invert or available volume is less than ½ day flow

___  _X_  Required pumping more than 4 times in the last year **NOT** due to clogged or obstructed pipe(s). Number of times pumped __1__ _with replacement of septic tank._

___  _X_  Any portion of the SAS, cesspool or privy is below high ground water elevation.

___  _N.A_  Any portion of cesspool or privy is within 100 feet of a surface water supply or tributary to a surface water supply.

___  _N.A_  Any portion of a cesspool or privy is within a Zone 1 of a public well. _(by the creek = Close to creek._

___  _N.A_  Any portion of a cesspool or privy is within 50 feet of a private water supply well.

___  _N.A._  Any portion of a cesspool or privy is less than 100 feet but greater than 50 feet from a private water supply well with no acceptable water quality analysis. **[This system passes if the well water analysis, performed at a DEP certified laboratory, for coliform bacteria and volatile organic compounds indicates that the well is free from pollution from that facility and the presence of ammonia nitrogen and nitrate nitrogen is equal to or less than 5 ppm, provided that no other failure criteria are triggered. A copy of the analysis must be attached to this form.]**

__NO__ (Yes/No) The system **fails**. I have determined that one or more of the above failure criteria exist as described in 310 CMR 15.303, therefore the system fails. The system owner should contact the Board of Health to determine what will be necessary to correct the failure.

**E.** Large Systems:   _N.A._
To be considered a large system the system must serve a facility with a design flow of 10,000 gpd to 15,000 gpd.
You must indicate either "yes" or "no" to each of the following:
(The following criteria apply to large systems in addition to the criteria above)

yes   no

___  ___  the system is within 400 feet of a surface drinking water supply

___  ___  the system is within 200 feet of a tributary to a surface drinking water supply

___  ___  the system is located in a nitrogen sensitive area (Interim Wellhead Protection Area – IWPA) or a mapped Zone II of a public water supply well

If you have answered "yes" to any question in Section E the system is considered a significant threat, or answered "yes" in Section D above the large system has failed. The owner or operator of any large system considered a significant threat under Section E or failed under Section D shall upgrade the system in accordance with 310 CMR 15.304. The system owner should contact the appropriate regional office of the Department.

File # __10/0__                    4                    _Sullivan Inspections_
                                                      _Tom Sullivan_
                                                      _P.O. Box 102, East Otis, MA_
                                                      _413-269-4830_

OFFICIAL INSPECTION FORM – NOT FOR VOLUNTARY ASSESSMENTS
SUBSURFACE SEWAGE DISPOSAL SYSTEM INSPECTION FORM
PART B
CHECKLIST

Property Address: _1405 Reservoir Road, East Otis_

Owner: _____Stearns_____

Date of Inspection: _August 16, 2001_

Check if the following have been done. You must indicate "yes" or "no" as to each of the following:

Yes  No

_X_ ___  Pumping information was~~provided by~~ requested of the owner, occupant, or Board of Health

___ _X_  Were any of the system components pumped out in the previous two weeks ?

_X_ ___  Has the system received normal flows in the previous two week period ?

___ _X_  Have large volumes of water been introduced to the system recently or as part of this inspection ?

_N.A._  Were as built plans of the system obtained and examined? (If they were not available note as N/A)

_X_ ___  Was the facility or dwelling inspected for signs of sewage back up ?

_X_ ___  Was the site inspected for signs of break out ?

_X_ ___  Were all system components, excluding the SAS, located on site ?

_X_ ___  Were the septic tank manholes uncovered, opened, and the interior of the tank inspected for the condition of the baffles or tees, material of construction, dimensions, depth of liquid, depth of sludge and depth of scum ?

_X_ ___  Was the facility owner (and occupants if different from owner) provided with information on the proper maintenance of subsurface sewage disposal systems ?

The size and location of the Soil Absorption System (SAS) on the site has been ~~XXXXXXX~~ based on:
approximated

Yes  no

___ ___  Existing information. For example, a plan at the Board of Health.
Approximated

_X_ ___  ~~Determined~~ in the field (if any of the failure criteria related to Part C is at issue approximation of distance is unacceptable) [310 CMR 15.302(3)(b)]

File # _1010_                                    5

**OFFICIAL INSPECTION FORM – NOT FOR VOLUNTARY ASSESSMENTS**
**SUBSURFACE SEWAGE DISPOSAL SYSTEM INSPECTION FORM**
**PART C**
**SYSTEM INFORMATION**

Property Address: __1495 Reservoir Road, East Otis__

Owner: _____Stearns_____
Date of Inspection: __August 16, 2001__
**FLOW CONDITIONS**

**RESIDENTIAL**
Number of bedrooms (design): __?__ Number of bedrooms (actual): __2__
DESIGN flow based on 310 CMR 15.203 (for example: 110 gpd x # of bedrooms): __Unknown__
Number of current residents: __Varies__
Does residence have a garbage grinder (yes or no): __No__
Is laundry on a separate sewage system (yes or no): __No__ [if yes separate inspection required]
Laundry system inspected (yes or no): __No separate system.__
Seasonal use: (yes or no):__No__
Water meter readings, if available (last 2 years usage (gpd)): __Well, no meter.__
Sump pump (yes or no): __Yes__
Last date of occupancy: __Present__

**COMMERCIAL/INDUSTRIAL        N.A.**
Type of establishment: _____
Design flow (based on 310 CMR 15.203): _____ gpd
Basis of design flow (seats/persons/sqft,etc.): _____
Grease trap present (yes or no): _____
Industrial waste holding tank present (yes or no): ___
Non-sanitary waste discharged to the Title 5 system (yes or no): ___
Water meter readings, if available: _____
Last date of occupancy/use: _____

**OTHER** (describe): _____

**GENERAL INFORMATION**

Pumping Records
Source of information: ___No pumping records found___
Was system pumped as part of the inspection (yes or no):__No__
If yes, volume pumped: _____gallons -- How was quantity pumped determined? _____
Reason for pumping: _____

**TYPE OF SYSTEM**
__X__ Septic tank, ~~distribution box~~, soil absorption system
___ Single cesspool
___ Overflow cesspool
___ Privy
__No__ Shared system (yes or no) (if yes, attach previous inspection records, if any)
___ Innovative/Alternative technology. Attach a copy of the current operation and maintenance contract (to be obtained from system owner)
___ Tight tank ___ Attach a copy of the DEP approval

___ Other (describe): _____

Approximate age of all components, date installed (if known) and source of information:
__New tank June 29, 2001, rest of system unknown.__

Were sewage odors detected when arriving at the site (yes or no): __No__

File # __10/0__                    6

**OFFICIAL INSPECTION FORM – NOT FOR VOLUNTARY ASSESSMENTS**
**SUBSURFACE SEWAGE DISPOSAL SYSTEM INSPECTION FORM**
**PART C**
**SYSTEM INFORMATION** (continued)

Property Address: ___1495 Reservoir Road, East Otis___

Owner: _____Stearns_____
Date of Inspection: ___August 16, 2001___

**BUILDING SEWER** (locate on site plan)

*went make*
*ence – her* 
*ut in A*
*oment tank*
*AS - is 46'*
*ould be 100' per Title 5' low*

Depth below grade: ___30"___
Materials of construction: _X_ cast iron _x_ 40 PVC ___ other (explain): _____
Distance from private water supply well or suction line: ___20'+___
Comments (on condition of joints, venting, evidence of leakage, etc.): ___Sewer appears normal with no evidence of leakage or venting.___

**SEPTIC TANK:** _x_ (locate on site plan)

Depth below grade: ___24"___
Material of construction: _X_ concrete ___metal ___fiberglass ___polyethylene
___other (explain)
If tank is metal list age: ___ Is age confirmed by a Certificate of Compliance (yes or no): ___ (attach a copy of certificate)
Dimensions: ___8'6" x 5' x 48" effective depth.___ — *I per note from Paul N. (DEP)*
Sludge depth: ___N.A.___
Distance from top of sludge to bottom of outlet tee or baffle: _____
Scum thickness: _____
Distance from top of scum to top of outlet tee or baffle: _____
Distance from bottom of scum to bottom of outlet tee or baffle: _____
How were dimensions determined: _____
Comments (on pumping recommendations, inlet and outlet tee or baffle condition, structural integrity, liquid levels as related to outlet invert, evidence of leakage, etc.): ___Tank is new and has not been used. DEP recommends pumping every 3 years or when the tank is 1/3 full of solids. See Permit #01-36.___
*I had to pump it out at 1 yr. 2 mts!*

**GREASE TRAP:** ___ (locate on site plan)

Depth below grade: None found.
Material of construction: ___concrete ___metal ___fiberglass ___polyethylene ___other (explain): _____
Dimensions: _____
Scum thickness: _____
Distance from top of scum to top of outlet tee or baffle: _____
Distance from bottom of scum to bottom of outlet tee or baffle: _____
Date of last pumping: _____
Comments (on pumping recommendations, inlet and outlet tee or baffle condition, structural integrity, liquid levels as related to outlet invert, evidence of leakage, etc.): _____

File # ___1010___

7

**OFFICIAL INSPECTION FORM – NOT FOR VOLUNTARY ASSESSMENTS**
**SUBSURFACE SEWAGE DISPOSAL SYSTEM INSPECTION FORM**
**PART C**
**SYSTEM INFORMATION** (continued)

Property Address: _1495 Reservoir_ Road, East Otis

Owner: _____Stearns_____
Date of Inspection: _August 16, 2001_

TIGHT or HOLDING TANK: ____ (tank must be pumped at time of inspection)(locate on site plan)
None found.
Depth below grade: _____
Material of construction: ____concrete ____metal ____fiberglass ____polyethylene ____other(explain):
_____
Dimensions: _____
Capacity: _____gallons
Design Flow: _____gallons/day
Alarm present (yes or no): ____
Alarm level: _____ Alarm in working order (yes or no): ____
Date of last pumping: _____
Comments (condition of alarm and float switches, etc.):

_____
_____

DISTRIBUTION BOX: ____ (if present must be opened)(locate on site plan)    Depth below grade:
(None found.)
Depth of liquid level above outlet invert: _____
Comments (note if box is level and distribution to outlets equal, any evidence of solids carryover, any evidence of leakage into or out of box, etc.):

_____
_____

PUMP CHAMBER: ____ (locate on site plan)
None found.
Pumps in working order (yes or no): ____
Alarms in working order (yes or no): ____
Comments (note condition of pump chamber, condition of pumps and appurtenances, etc.):

_____
_____

File # _10 10_                              8

**OFFICIAL INSPECTION FORM – NOT FOR VOLUNTARY ASSESSMENTS**
**SUBSURFACE SEWAGE DISPOSAL SYSTEM INSPECTION FORM**
**PART C**
**SYSTEM INFORMATION** (continued)

Property Address: __1495 Reservoir_ Road, East Otis

Owner: _____Stearns_____
Date of Inspection: ____August 16, 2001_____

**SOIL ABSORPTION SYSTEM (SAS):** ____ (locate on site plan, excavation not required)
_Location may be approximated by non-intrusive methods._____

If SAS not located explain why: _____
_____
_____

**Type**
_X_ leaching pits, number: _1_
____ leaching chambers, number: ____
____ leaching galleries, number: ____
____ leaching trenches, number, length: _____
____ leaching fields, number, dimensions: _____
____ overflow cesspool, number: ____
____ innovative/alternative system  Type/name of technology: _____
Comments (note condition of soil, signs of hydraulic failure, level of ponding, damp soil, condition of vegetation, etc.):
__The SAS was monitered and dye tested for two days of design_
flow and showed no signs of breakout, ponding, hydraulic failure,
or abnormal vegetation. Testing witnessed by Jack Conboy, OBOH.

**CESSPOOLS:** ____ (cesspool must be pumped as part of inspection)(locate on site plan)
None found.
Number and configuration: _____
Depth – top of liquid to inlet invert: _____
Depth of solids layer: _____
Depth of scum layer: _____
Dimensions of cesspool: _____
Materials of construction: _____
Indication of groundwater inflow (yes or no): _____
Comments (note condition of soil, signs of hydraulic failure, level of ponding, condition of vegetation, etc.):
_____
_____

**PRIVY:** ____ (locate on site plan)
None found.
Materials of construction: _____
Dimensions: _____
Depth of solids: _____
Comments (note condition of soil, signs of hydraulic failure, level of ponding, condition of vegetation, etc.):
_____
_____

File
  # _1010_____

**OFFICIAL INSPECTION FORM – NOT FOR VOLUNTARY ASSESSMENTS**
**SUBSURFACE SEWAGE DISPOSAL SYSTEM INSPECTION FORM**
**PART C**
**SYSTEM INFORMATION** (continued)

Property Address: ___1495 Reservoir__ Road, East Otis

Owner: _____Stearns_____
Date of Inspection: ~~August 16~~, 2001

**SKETCH OF SEWAGE DISPOSAL SYSTEM    NOT TO SCALE ! !**
Provide a sketch of the sewage disposal system including ties to at least two permanent reference landmarks or
benchmarks. Locate all wells within 100 feet. Locate where public water supply enters the building.



File # __100__                    10

OFFICIAL INSPECTION FORM – NOT FOR VOLUNTARY ASSESSMENTS
SUBSURFACE SEWAGE DISPOSAL SYSTEM INSPECTION FORM
PART C
SYSTEM INFORMATION (continued)

Property Address: _____ 1495 Reservoir Road, East Otis

Owner: _____ Stearns.
Date of Inspection: _____ August 16, 2001

SITE EXAM
Slope                    Varies to steep.
Surface water            None
Check cellar             Dry
Shallow wells            None found.

Estimated depth to ground water __8__ feet ±

Please indicate (check) all methods used to determine the high ground water elevation:

_____ Obtained from system design plans on record - If checked, date of design plan reviewed: _____
__X__ Observed site (abutting property/observation hole within 150 feet of SAS) ← 150 ft would be the creek!! or did they look uphill!
_____ Checked with local Board of Health-explain: _____
__X__ Checked with local excavators, installers- (attach documentation)     See Permit #01-36
_____ Accessed USGS database-explain: _____

                    estimated
You must describe how you established the high ground water elevation:
The excavation for the new septic tank went to 8' below grade and
was dry in porous gravelly soils. Culvert below the system was dry.

Note: '2001' WAS A very/Dry Season on record
(water test will not be true because it was Dry)

there is No "Culvert" just A Road

Pits/ 8 ft. to ground water

HY if it ELour grade is DRY

File # __1010__                    II



# Water Testing

**Report #: 72601872**

Lab Certification No. 11676 DOH NY

| Date Collected: | 7/24/01 |
|---|---|
| Date Received: | 7/26/01 |
| Date Analyzed: | 7/26/01 |

Page 1 of 4

**Customer:** Sullivan Inspections
P.O. Box # 4052
East Otis, MA  01029-

**Client :** #1010 Kerry Stearns

**Sample Location:** 1495 Reservoir Rd.
East Otis, MA

**Matrix:** Drinking Water

**Purchase Order #:**

**Sample Description** This sample taken by David S. at 02:45 PM on 7/24/01. Point of Collection: Kitchen.

## * Title 5 Scan Report *

| PARAMETER | RESULTS | Maximum Contamination Limit | DESCRIPTION | | Minimum Detection Level |
|---|---|---|---|---|---|
| Total Coliform | Absent | Present | Animal/Vegetational Bacteria | (Health Related) | 0/100 |
| Nitrate | 0.68 | 5.0 mg/L | Indicator of Biological Waste | (Health Related) | 0.10 |
| Ammonia | Not Detected | 5.0 mg/L | Indicator of Waste | | 0.01 |

**\* = Outside of Recommended Limits**

### Visit us on the Web

The integrity of the sample and results are dependent on the quality of sampling. The results apply only to the actual sample tested. Some methods may be modified to accomadate transportation. A.A.A. Water Testing shall be held harmless from any liability arising out of the use of such results.

100 Commercial Road ◆ Leominster, MA 01453 ◆ (978) 840-2941 ◆ (800) 344-9977
info@aaawatertesting.com ◆ http://www.aaawatertesting.com

# AAA Water Testing

Report #: 72601872

| | |
|---|---|
| Date Collected: | 7/24/01 |
| Date Received: | 7/26/01 |
| Date Analyzed: | 7/26/01 |

Lab Certification No. 11676 DOH NY

Page 2 of 4

**Customer:** Sullivan Inspections
P.O. Box # 4052
East Otis, MA 01029-

**Client:** #1010 Kerry Stearns
**Sample Location:** 1495 Reservoir Rd.
East Otis, MA

**Matrix:** Drinking Water

Purchase Order #:

**Sample Description** This sample taken by David S. at 02:45 PM on 7/24/01.
Point of Collection: Kitchen.

## * Title 5 Scan Report *

| ANALYTE | RESULTS (ug/L) | Maximum Contamination Limit (ug/L) | Minimum Detection Level (ug/L) |
|---|---|---|---|
| Benzene: | Not Detected | 5.0 | 0.5 |
| Bromobenzene: | Not Detected | | 0.5 |
| Bromochloromethane: | Not Detected | | 0.5 |
| Bromodichloromethane: | Not Detected | | 0.5 |
| Bromoform: | Not Detected | | 0.5 |
| Bromomethane: | Not Detected | | 0.5 |
| n-Butylbenzene: | Not Detected | | 0.5 |
| sec-Butylbenzene: | Not Detected | | 0.5 |
| tert-Butylbenzene: | Not Detected | | 0.5 |
| Carbon-Tetrachloride: | Not Detected | 5.0 | 0.5 |
| Chlorodibromomethane: | Not Detected | | 0.5 |
| Chloroethane: | Not Detected | | 0.5 |
| Chloroform: | Not Detected | | 0.5 |
| Chloromethane: | Not Detected | | 0.5 |
| o-Chlorotoluene: | Not Detected | | 0.5 |
| p-Chlorotoluene: | Not Detected | | 0.5 |
| 1,2-Dibromo-3-chloropropane: | Not Detected | | 0.5 |
| Dibromomethane: | Not Detected | | 0.5 |
| 1,2-Dibromoethane: | Not Detected | | 0.5 |
| m-Dichlorobenzene: | Not Detected | | 0.5 |
| o-Dichlorobenzene: | Not Detected | 600.0 | 0.5 |
| para-Dichlorobenzene: | Not Detected | 5.0 | 0.5 |
| Dichloromethane: | 0.79 | 5.0 | 0.5 |

eAch →

## *= Outside of Recommended Limits

Visit us on the Web

The integrity of the sample and results are dependent on the quality of sampling. The results apply only to the actual sample tested. Some methods may be modified to accomodate transportation. AAA Water Testing shall be held harmless from any liability arising out of the use of such results.

100 COMMERCIAL ROAD ♦ LEOMINSTER, MA 01453 ♦ (978) 840-2941 ♦ (800) 344-9977
INFO@AAAWATERTESTING.COM ♦ HTTP://WWW.AAAWATERTESTING.COM

# AAA Water Testing

Report #: 72601872

Lab Certification No. 11676 DOH NY

**Page 3 of 4**

| | |
|---|---|
| Date Collected: | 7/24/01 |
| Date Received: | 7/26/01 |
| Date Analyzed: | 7/26/01 |

**Customer:** Sullivan Inspections
P.O. Box # 4052
East Otis, MA 01029-

**Client :** #1010 Kerry Stearns
**Sample Location:** 1495 Reservoir Rd.
East Otis, MA

**Matrix:** Drinking Water

**Purchase Order #:**

**Sample Description** This sample taken by David S. at 02:45 PM on 7/24/01.
Point of Collection: Kitchen.

## * Title 5 Scan Report *

| ANALYTE | RESULTS (ug/L) | Maximum Contamination Limit (ug/L) | Minimum Detection Level (ug/L) |
|---|---|---|---|
| Dichlorodifluoromethane: | | | |
| 1,1-Dichloroethane: | Not Detected | | 0.5 |
| 1,2-Dichloroethane: | Not Detected | | 0.5 |
| 1,1-Dichloroethylene: | Not Detected | 5.0 | 0.5 |
| cis-1,2-Dichloroethylene: | Not Detected | 7.0 | 0.5 |
| trans-1,2-Dichloroethylene: | Not Detected | 70.0 | 0.5 |
| 1,2-Dichloropropane: | Not Detected | 100.0 | 0.5 |
| 1,3-Dichloropropane: | Not Detected | 5.0 | 0.5 |
| 2,2 Dichloropropane: | Not Detected | | 0.5 |
| 1,1 Dichloropropene: | Not Detected | | 0.5 |
| 1,3-Dichloropropene: | Not Detected | | 0.5 |
| trans-1,3-Dichloropropene: | Not Detected | | 0.5 |
| Ethylbenzene: | Not Detected | 700.0 | 0.5 |
| Fluorotrichloromethane: | Not Detected | | 0.5 |
| Hexachlorobutadiene: | Not Detected | | 0.5 |
| Isopropylbenzene: | Not Detected | | 0.5 |
| p-Isopropyltoluene: | Not Detected | | 0.5 |
| Monochlorobenzene: | Not Detected | 100.0 | 0.5 |
| Napthalene: | Not Detected | | 0.5 |
| n-Propylbenzene: | Not Detected | | 0.5 |
| Styrene: | Not Detected | 100.0 | 0.5 |
| 1,1,1,2-Tetrachloroethane: | Not Detected | | 0.5 |
| 1,1,2,2-Tetrachloroethane: | Not Detected | | 0.5 |

## *: Outside of Recommended Limits

### Visit us on the Web

The integrity of the sample and results are dependent on the quality of sampling. The results apply only to the actual sample tested. Some methods may be modified to accomodate transportation. AAA Water Testing shall be held harmless from any liability arising out of the use of such results.

100 COMMERCIAL ROAD ♦ LEOMINSTER, MA 01453 ♦ (978) 840-2941 ♦ (800) 344-9977
INFO@AAAWATERTESTING.COM ♦ HTTP://WWW.AAAWATERTESTING.COM



# Water Testing

**Report #:** 72601872

| | |
|---|---|
| Date Collected: | 7/24/01 |
| Date Received: | 7/26/01 |
| Date Analyzed: | 7/26/01 |

Lab Certification No. 11676 DOH NY

Page 4 of 4

**Customer:** Sullivan Inspections
P.O. Box # 4052
East Otis, MA  01029-

**Client :** #1010 Kerry Stearns

**Sample Location:** 1495 Reservoir Rd.
East Otis, MA

**Matrix:** Drinking Water

**Sample Description** This sample taken by David S. at 02:45 PM on 7/24/01. Point of Collection: Kitchen.

Purchase Order #:

## * Title 5 Scan Report *

| ANALYTE | RESULTS (ug/L) | Maximum Contamination Limit (ug/L) | Minimum Detection Level (ug/L) |
|---|---|---|---|
| Tetrachloroethylene: | Not Detected | 5.0 | 0.5 |
| Toluene: | Not Detected | 1000.0 | 0.5 |
| 1,2,3-Trichlorobenzene: | Not Detected | | 0.5 |
| 1,2,4-Trichlorobenzene: | Not Detected | 70.0 | 0.5 |
| 1,1,1-Trichloroethane: | Not Detected | 200.0 | 0.5 |
| 1,1,2-Trichloroethane: | Not Detected | 5.0 | 0.5 |
| Trichloroethylene: | Not Detected | 5.0 | 0.5 |
| 1,2,3-Trichloropropane: | Not Detected | | 0.5 |
| 1,2,4-Trimethylbenzene: | Not Detected | | 0.5 |
| 1,3,5-Trimethylbenzene: | Not Detected | | 0.5 |
| Vinyl Chloride: | Not Detected | 2.0 | 0.5 |
| o-Xylene: | Not Detected | Total Xylenes 10,000 | 0.5 |
| m + p-Xylenes: | Not Detected | Total Xylenes 10,000 | 0.5 |

**\* = Outside of Recommended Limits**

Visit us on the Web

The integrity of the sample and results are dependent on the quality of sampling. The results apply only to the actual sample tested. Some methods may be modified to accomodate transportation. AAA Water Testing shall be held harmless from any liability arising out of the use of such results.

100 COMMERCIAL ROAD ♦ LEOMINSTER, MA 01453 ♦ (978) 840-2941 ♦ (800) 344-9977
INFO@AAAWATERTESTING.COM ♦ HTTP://WWW.AAAWATERTESTING.COM

# TOWN OF OTIS
### BOARD OF SELECTMEN
### BOARD OF HEALTH
Town Hall, Main Street
P.O. Box 237, Otis, Massachusetts 01253
Telephone: (413) 269-0103
Fax: (413) 269-0104

*Mailed to Kerry Stearns Kerry 9-12-01*



Mr. Kerry Stearns
P.O. Box 678
Otis, MA 01053

September 11, 2001

Re: Title 5 Inspection 1495 Reservoir Road, Otis

Dear Mr. Stearns:

On behalf of the Otis Board of Health, I have reviewed the Title 5 Inspection Report conducted by David Sullivan on August 17, 2001 for the above named property. The inspection indicated that further evaluation was necessary by the Board of Health due to limited information that could be obtained regarding the soil absorption system, and the proximity of the well water supply to the septic system.
A copy of a water quality analysis report was attached, which confirmed that the water supply at the time of sampling, did meet drinking water standards in accordance with Part A Section C (2) of the inspection report.
Based on the information submitted to date, the septic system serving this property **passes**, Title 5 Inspection requirements.
You are advised that the existing septic system is substandard in comparison to existing regulations. A passing Title 5 inspection should not be construed as a guarantee that the existing septic system will continue to properly function for any period of time. Should you have any questions, please contact me at 413-586-7722 or the Board of Health at 413-269-0103.

Sincerely,

Peter J. Kolodziej R.S.
Agent, Otis Board of Health

Cc: Board of Health, Jack Conboy, David Sullivan

\* I Do Recall — the inspection report — stated this info. H

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Mrs. Laurie Nikituk
204 Kingstley Rd.
Otis, MA 01253

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X [signature] ☐ Agent ☒ Addressee

B. Received by (Printed Name): Laurie C. Nikituk

C. Date of Delivery: 3-18-04

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number (Transfer from service label): 7002 2410 0004 8796 8835

PS Form 3811, August 2001 Domestic Return Receipt 102595-02-M-1540

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

7002 2410 0004 8796 8835

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ 1.29 |
| Certified Fee | 2.30 |
| Return Reciept Fee (Endorsement Required) | 1.75 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 5.34 |

Postmark: [illegible]FIELD MA 3-8-04

U.S. POSTAGE 0.00 PB METER 8175521

Sent To: Laurie Nikituk
Street, Apt. No.; or PO Box No.: 204 Kingstley
City, State, ZIP+4: Otis, MA 01253

PS Form 3800, June 2002 See Reverse for Instructions

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Ricky L. Moore & Kathryn M. Moore

### DEFENDANTS
Kerry P. Stearns, Laurie C. Nikituk and Pond Pasture Real Estate, Inc.

**(b)** County of Residence of First Listed Plaintiff  **Iron County**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  **Berkshire County**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number) Bradford B. Moir
Moir & Ross, 45 Broad St. Suite 2,
Westfield, MA 01085, 413-568-1957

Attorneys (If Known)

05-30010-MAP

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

### CONTRACT
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☒ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

### REAL PROPERTY
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☒ 360 Other Personal Injury

**PERSONAL INJURY**
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☒ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### CIVIL RIGHTS
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

### PRISONER PETITIONS
- ☐ 510 Motions to Vacate Sentence
  **Habeas Corpus:**
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

### FORFEITURE/PENALTY
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

### LABOR
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

### BANKRUPTCY
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

### SOCIAL SECURITY
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organization
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity): 28 U.S.C. 1332

Brief description of cause: Buyers of real property v. seller and real estate agent for fraud/deceit/misrepresentation/93A and personal injuries.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE ___ DOCKET NUMBER ___

DATE 1-14-05

SIGNATURE OF ATTORNEY OF RECORD

### FOR OFFICE USE ONLY

RECEIPT # ___ AMOUNT ___ APPLYING IFP ___ JUDGE ___ MAG. JUDGE ___

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1.  Title of case (name of first party on each side only)  Moore v. Stearns

2.  Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local rule 40.1(a)(1)).

05 - 30010 - MAP

- [ ]  I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

- [ ]  II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,
           740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.    *Also complete AO 120 or AO 121
                                                                            for patent, trademark or copyright cases

- [x]  III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
           315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
           380, 385, 450, 891.

- [ ]  IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
           690, 810, 861-865, 870, 871, 875, 900.

- [ ]  V.    150, 152, 153.

3.  Title and number, if any, of related cases. (See local rule 40.1(g)).  If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

    None

4.  Has a prior action between the same parties and based on the same claim ever been filed in this court?

                                                                  YES [ ]   NO [x]

5.  Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?  (See 28 USC §2403)

                                                                  YES [ ]   NO [x]

    If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

                                                                  YES [ ]   NO [ ]

6.  Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

                                                                  YES [ ]   NO [x]

7.  Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

                                                                  YES [x]   NO [ ]

    A.  If yes, in which division do all of the non-governmental parties reside?

        Eastern Division [ ]        Central Division [ ]        Western Division [x]

    B.  If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

        Eastern Division [ ]        Central Division [ ]        Western Division [ ]

8.  If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

                                                                  YES [ ]   NO [ ]

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME    Bradford B. Moir

ADDRESS    45 Broad Street, Westfield, MA

TELEPHONE NO.    413 568 1957

(Coversheetlocal.wpd - 10/17/02)