# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

WESTERN DIVISION

Docket No.05-30010-MAP

RICKY L. MOORE and KATHRYN M. MOORE

                   Plaintiffs

v.

KERRY P. STEARNS, LAURIE C. NIKITUK and POND PASTURE, Inc.

                   Defendants

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR OPPOSITION TO DEFENDANT LAURIE C. NIKITUK'S MOTION TO DISMISS**

## I.   INTRODUCTION

Defendant Nikituk has filed a motion to dismiss and conveniently characterized the plaintiff's mental anguish, pain and suffering, loss of property and otherwise minimized the plaintiffs' damages as inconsequential. The plaintiff's had relocated from Michigan to Massachusetts. They found out after living in the house the defendant Stearns sold to them, and Nikituk as agent for Stearns brokered, that the water that they had been drinking, cooking with, bathing in was contaminated with either their or a neighbors feces. The plaintiffs have sufficiently plead the causes of action which entitle them to damages which if successful at trial would entitle them to damages in excess of seventy five thousand ($75,000.00) dollars.

II.   THE COMPLAINT

The Plaintiffs Ricky L. Moore and Kathryn M. Moore are husband and wife. They relocated from the state of Michigan to the property they purchased 1495 Reservoir Road in Otis, Massachusetts. Kathryn M. Moore learned of the property via a listing on the Internet. She contacted the listing broker, Laurie Nikituk, agent for Pond Pasture, Inc. and requested more information on the listing. A purchase and sale agreement was entered into between Stearns and Ricky L. Moore on July 22, 2002. As part of the agreement, Stearns made a representation that there were no known problems with the water. As specifically averred in the plaintiffs' first amended complaint, the plaintiff's specifically questioned Laurie Nikituk as to whether the seller had ever had any problems with the drinking water supply, to which Nikituk responded, the water has already been tested, it passed and it would be a waste of their money to perform any further test. (First Amended Complaint ¶¶48,49). This representation was relied upon and no further testing was done.

The property was conveyed on August 20, 2002. A few months after taking possession the plaintiffs started to experience various ailments. For months they were sick with flu like symptoms, but worse (Sinus infections, headaches, diarrhea, excessive sweating, fatigue, body aches, etc). After several

months of testing by their physician it could not be determined what was causing their illness. They were then advised to have their water tested. The water test revealed excessively high concentrates of Total Coliform, E-Coli, and Nitrate, indicative of their water being contaminated by human waste or septic pollution. Their physician advised them to immediately cease drinking or cooking with the water as did the environmental laboratory who tested the water. It was only after this test that the plaintiffs learned that the defendant Stearns was aware of the issues with the drinking water and failed to disclose such.

After learning of the contamination and that they had been ingesting this polluted water, the plaintiff's were traumatized. The Moores spoke with several people in the well service and installation industry who confirmed their worst fears, that the cost to alleviate the problem was substantial and there was no guarantees that a new well would fix the problem as the source of the contamination was unknown. The Moores simply did not have the means necessary to fix the problem. They had committed all of their savings to purchasing the property and the equity in the property was tapped out. The plaintiffs could not sell the property because it would not pass Title V in its present condition unless they engaged in tactics to cover up the problem (bleach the well repeatedly and test the water after). The

Moores were not about to commit a fraud and certainly did not want to put anyone through what they had been through and as such have abandoned the property and left the state

### III. DISCUSSION

#### A. STANDARD OF REVIEW

Under § 1332(a), federal diversity jurisdiction exists only if "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." See 28 U.S.C. § 1332(a); *Bull HN Information Sys. v. Hutson*, 229 F.3d 321, 328 (1st Cir.2000), *Chapman v. Anthem Health Plans of New Hampshire* Slip Copy, 2005 WL 827088, (D.N.H.,2005, J. Barbadoro). According to the United States Supreme Court, however, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal" on the basis that the amount in controversy requirement has not been met. *Id*, *St. Paul Mercury Indemn. Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938); see *Spielman v. Genzyme Corp.*, 251 F.3d 1, 5 (1st Cir.2001).

#### B. THE COMPLAINT CLEARLY MEETS THAT AMOUNT IN CONTROVERSY REQUIREMENT.

The complaint against the defendant consists of several alternative remedies against the three defendants. One of the remedies sought by the plaintiffs is reimbursement for the

entire purchase price of the real estate, plus the late penalties, interest and cost the lender has assessed against the plaintiffs, which at this point in time is in excess of $98,658.76. As an alternative remedy, the plaintiff has sought damages equal to the cost to replace the existing septic system, at a cost unknown and the cost to sink a new well, which was estimated to be $8,270.36 in 2003. The problem with this remedy is that the well installers are unwilling to guarantee (1) that they will be able to find water due to the substantial amount of ledge located on the property and limited area to drill due to the proximity of the septic system or (2) that a new well will alleviate the current contamination issues.

In addition, each plaintiff is seeking compensation for physical pain and suffering and mental anguish that resulted from ingesting and bathing in water that was contaminated with human waste for over a year. The physical ailments that resulted admittedly did not result in substantial medical cost. The plaintiffs did however suffer considerably, both physically and psychologically and continue to suffer. The defendant Nikituk if found liable for the misrepresentation may be also be held accountable pursuant to the Massachusetts Consumer Protection Act, Mass. Gen. Laws 93A. If responsible, Nikituk would be liable to the plaintiffs for their actual damages, doubled or trebled, costs and attorney's fees. The damages,

including the punitive damages provided for by the statute and attorney's fees all contribute to the requisite jurisdictional amount. *See Missouri State Life Ins. Co. v. Jones*, 290 U.S. 199, 202, 54 S.Ct. 133, 78 L.Ed. 267 (1933) (holding that attorney's fees shall be included as part of the amount in controversy calculation). Given the tortious nature of the defendants conduct and the subsequent trauma it has caused the plaintiffs, it is difficult to determine the plaintiffs damages. However, given the degree of physical pain and suffering and severe emotional trauma, damages, including punitive damages and attorney's fee's will be substantial and surpass the $75,000.00 requirement.

The defendant has cited *Volvo North America v. Mens International Pro Tennis Council*, 678 F. Supp. 1035 (DCNY 1987) as standing for the proposition that failure to plead a specific amount of damages is fatal to the plaintiffs' complaint. Although that assertion may hold true in a breach of contract action where damages are readily ascertainable, it would be much more difficult for a plaintiff to assert a specific damage amount in a claim tortious conduct. Rather the requirement is that the plaintiff must plead in good faith.

"Ordinarily the plaintiff's claim with respect to the value of the property taken from him or the amount of damages incurred by him, through the defendants 'wrongful act measures, for jurisdictional purposes, the value of the matter in controversy * * *, unless, upon inspection of the

plaintiff's declaration, it appears that, as a matter of law it is not possible for the plaintiff to recover the jurisdictional amount * * *." *Smithers* v. *Smith*, 27 S.Ct. 297, 299, 204 U.S. 632, 642, 51 L.Ed. 656 (1907).

IV. <u>CONCLUSION</u>

For the foregoing reasons the Defendant prays this Honorable Court denies the defendant's motion to dismiss.

                THE PLAINTIFFS
                Ricky L. Moore and Kathryn M. Moore
                By their attorney,

Dated: <u>April 14, 2005</u>

                /s/ Bradford B. Moir
                Bradford B. Moir, Esquire
                MOIR & ROSS
                45 Broad Street, Suite #2
                Westfield, MA 01085
                Tel. (413) 568-1957
                Fax. (413) 562-4691
                BBO# 350600